**Roosevelt SYKES, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.
Dec. 10, 1971.

Certiorari Denied by Supreme Court
Feb. 7, 1972.

Hugh W. Stanton, Jr., Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, James G. Hall, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

OLIVER, Judge.

Roosevelt Sykes, the petitioner below, indigent and represented by the Shelby County Public Defender duly appointed, an inmate of the State Penitentiary where he is serving concurrent sentences of 10 years and three years for armed robbery and third degree burglary, respectively, adjudged upon his pleas of guilty in the Criminal Court of Shelby County while represented by retained trial counsel, appeals to this Court from the judgment of that court dismissing his habeas corpus petition, filed under the Post-Conviction Procedure Act, without an evidentiary hearing.

The record shows that upon his trial for the above-mentioned felonies, the defendant filed a petition asking to be permitted to plead guilty and waive trial by jury and to submit his cases to the court, and stating that he had been fully advised by his attorney concerning the offenses for which he was indicted and the punishment provided by law and fully understood his rights with reference to a jury trial upon a plea of not guilty and his right of appeal; and his petition, approved by his counsel and the Assistant District Attorney General, also stated that he had been advised that if his pleas of guilty were accepted by the court he would receive the concurrent sentences hereinabove indicated. The record further shows that the trial court thereupon entered the following order:

"This cause came on for hearing before the Honorable Arthur C. Faquin, Jr., Judge of Division II, of the Criminal Court of Shelby County, Tennessee, on the petition of the defendant, Roosevelt Tyrone Sykes for waiver of trial by jury, waiver to his right to have the jury determine his guilt and fix his punishment, to submit himself to the trial Judge to determine his guilt and fix his punishment, and request for acceptance of plea of guilty, said petition being attached hereto and incorporated by reference herein, upon statements made in open Court by the defendant herein, his attorney of record, the Assistant Attorney General representing the State of Tennessee; and from questioning by the Court of the defendant and his counsel in open Court, AND

"IT APPEARING TO THE COURT after careful consideration that the defendant herein has been fully advised and understands his rights to a trial by jury and to have a jury determine his guilt and fix his punishment on the merits of the indictment against him, and that the defendant does not elect to have a jury determine his guilt or innocence under a plea of Not Guilty, nor fix his punishment; and has waived the formal reading of the indictment, AND

"IT FURTHER APPEARING TO THE COURT that the defendant intelli-

gently and understandingly waives his right to a trial and his right to have a jury determine his guilt and fix his punishment of his own free will and choice and without any threats or pressure of any kind or promises, other than the recommendation of the State as to punishment, and does desire to enter a plea of guilty and accept the recommendation of the State as to punishment, and seasonably submits himself to the trial Judge to determine his guilt and fix his punishment; and waives his right to a Motion for a New Trial and/or an Appeal.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Petition filed herein be, and the same is hereby granted.

"Enter, this the 1st day of July, 1969.

/s/ Arthur C. Faquin, Jr.
JUDGE"

In attacking his convictions and sentences, Sykes avers in his petition (1) that he was not taken immediately before a committing magistrate upon his arrest, and was not presented before a magistrate until several hours later, (2) that his retained counsel was ineffective, (3) that the evidence which the State had against him "did not preponderate a plea of guilty as his ineffective counsel induced him to plead too," (4) that the State placed him in double jeopardy by indicting him for two crimes arising out of a single act, and (5) that a conspiracy "must have taken place for his constitutional rights have been grossly violated." He reiterates the substance of these contentions in his Assignments of Error.

The petitioner's complaint that the arresting officers detained him several hours before taking him before a magistrate is untenable. Neither of the statutes cited by the petitioner, nor any other, sustains his position. The law is settled in this State that an arrested suspect need not be taken immediately before a committing magistrate, and that the arresting officers may hold such person temporarily before presenting him before a magistrate. East v. State, 197 Tenn. 644, 277 S.W.2d 361; Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105; Van Zandt v. State, 218 Tenn. 187, 402 S.W.2d 130; State ex rel. Reed v. Heer, 218 Tenn. 338, 402 S.W.2d 310; State ex rel. Leighton v. Henderson, Tenn.Cr.App., 448 S.W.2d 82. The petitioner makes no claim that any confession or admission against interest was made to the arresting officers before they took him to the magistrate. Clearly, he suffered no infringement of his constitutional rights by the temporary interim detention.

Sykes' complaint about his retained counsel relates only to his guilty pleas. He charges that "the counsel did not try to make a defense of petitioner's case but only by threats, fraud, coerce, treachery and trickery, he along with the prosecutor, District Attorney's Office, had petitioner plea guilty to the charge, when all the time the petitioner had maintained his inoncence [sic]. By the fraud and ineffective assistance the counsel, Mr. John Aycock, had petitioner to sign papers of waiver to all of his rights as motion for a new trial, appeal to the highest Court of the land, if petitioner had went to trial as he wanted counsel to take his case, but the counsel told petitioner and petitioner's mother, that if the petitioner went to trial without pleading guilty he would receive no less than twenty years, because the State had through the prosecutor coached the State's witness to what to say, and how to say it to get the petitioner convicted. In words and action the counsel showed unto the petitioner that, he did not have the best interest petitioner's case at heart, for he only summon to Court for trial one of the witnesses that petititioner [sic] had asked counsel to summon for his behalf, and this witness was one of those in on the alleged robbery. As an experience attorney, he must have known not only the impropriety, but the gross injustice he was fostering upon the petitioner. The counsel literally forced the petitioner to plea guilty to an

offense of what he the petitioner was not guilty of."

■■ A plea of guilty is not sacrosanct and immutable, even when formalized in the careful language of a court-prescribed "Petition for Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty." The execution of such forms by a defendant and his counsel in a criminal case, and the trial court's acceptance of such a plea, does not and cannot forever preclude the defendant from raising any question about the voluntariness of his guilty plea. Surely it cannot be said that such a procedure permanently forecloses the issue of voluntariness. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ This is true for the plain and simple reason that a conviction based upon an involuntary plea of guilty is void, and, therefore, the question of the voluntariness of a plea of guilty is never foreclosed while any part of the resulting sentence remains unexecuted. The law is no longer open to debate or question that a guilty plea is involuntary and void if, for example, it is induced by promises of preferential treatment or threats or intimidation or the accused's total misapprehension of his rights, through official misrepresentation, fear or fraud. Henderson v. State ex rel. Lance, 220 Tenn. 520, 419 S.W.2d 176; Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; Olive v. United States, 327 F.2d 646 (6th Cir. 1964), cert. den. 377 U.S. 971, 84 S.Ct. 1653, 12 L.Ed.2d 740; Scott v. United States, 349 F.2d 641 (6th Cir. 1965).

■ But a convicted defendant may not, as this petitioner has endeavored to do, be heard to assail his guilty-plea conviction collaterally by pure conclusory allegations unsupported by any averments of fact, and such abstract assertions in a habeas corpus or post-conviction petition do not justify or require an evidentiary hearing. Jones v. State, Tenn.Cr.App., 452 S.W.2d 361; Reams v. Davis, 333 F.2d 430

(6th Cir. 1964); Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. Charging such vague and imprecise and conclusory terms as "threats, fraud, coerce, treachery and trickery," and "forced the petitioner to plea guilty," without any statement of facts supporting those broad generalizations, does not justify or require an evidentiary hearing.

■ But the petitioner overlooks other pertinent legal principles. The fact that he was represented by competent counsel at the time he entered his guilty pleas is "a factor which strongly militates against the conclusion that the plea was involuntary." Adams v. State, Tenn.Cr.App., 467 S.W.2d 841; Shepard and Owens v. Henderson, Tenn.Cr.App., 449 S.W.2d 726; Reed v. Henderson, 385 F.2d 995 (6th Cir. 1967).

■ He has also failed to take into account the legal effect of his guilty pleas. A guilty-plea conviction is based entirely upon the plea. Such a plea constitutes a conviction in and of itself and is conclusive. Beaty v. Neil, Tenn.Cr.App., 467 S.W.2d 844; Adams v. State, supra; Shepard and Owens v. Henderson, supra. It is a conviction of the highest order. Adams v. State, supra; 4 Wharton's Criminal Law and Procedure §§ 1900, 1901, 2247.

■ But this is not all. Unquestionably the law is now settled that when a defendant is represented by privately retained counsel, no "State-action" is involved, and the actions and/or non-action of such private counsel must be imputed to the defendant and not to the State and he is bound thereby, absent any objection made to the court. The Fourteenth Amendment to the Constitution of the United States is directed at State action and not at the action of private individuals. Morgan v. State, Tenn.Cr.App., 445 S.W.2d 477. In addition to the authorities cited in *Morgan*, see also: State ex rel. Donehue v. Russell, 221 Tenn. 609, 429 S.W.2d 818; State ex rel. Richmond v. Henderson, 222 Tenn. 597, 439 S.W.2d 263;

State ex rel. Gann v. Henderson, 221 Tenn. 209, 425 S.W.2d 616; State ex rel. Johnson v. Heer, 219 Tenn. 604, 412 S.W. 2d 218; Carvin v. State, Tenn.Cr.App., 452 S.W.2d 681; Beaty v. Neil, supra.

In Richmond v. Henderson, supra, the Supreme Court of this State made the following statements—very appropriate here:

" 'Petitioner's rights, if any, flow from the federal constitutionally guaranteed right to counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). So, while an allegation of affirmative misconduct superficially excites more judicial interest and investigation, still, the question remains whether under the facts there has been a denial of federal due process by ineffective representation; representation of the kind resulting in a void judgment.

" 'The standard applied by the overwhelming majority of federal courts in considering this question is stated as follows:

"Incompetency of counsel such as to be a denial of due process and effective representation by counsel must be such as to make the trial a farce, sham, or mockery of justice."

\*　　\*　　\*　　\*　　\*　　\*

" 'This rule has been applied to any number of situations arising in a criminal case, including that situation involving the advice or urging of defense counsel for the defendant to enter a plea of guilty. *In cases in which this exercise of judgment by counsel (that of urging a defendant to enter a plea of guilty) has been attacked, it has uniformly been held that this is not a ground for invalidating the judgment.*' " Citing cases. (Emphasis supplied). Beaty v. Neil, supra.

Also apropos and timely are the following amplifying pronouncements of the United States Supreme Court in McMann v. Richardson, supra:

". . ., the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

\*　　\*　　\*　　\*　　\*　　\*

". . . But because of inherent uncertainty in guilty-plea advice, this is a highly speculative matter in any particular case and not an issue promising a meaningful and productive evidentiary hearing long after entry of the guilty plea."

█ Upon this record, the plain fact clearly emerges that, far from representing him incompetently or ineffectively, Sykes' retained trial attorney, by successful negotiation with the State, obtained for him the

minimum sentence for the capital offense of armed robbery (T.C.A. § 39–3901), and the minimum sentence for third degree burglary (T.C.A. § 39–904) to be served concurrently with his robbery sentence—amounting, in effect, to no punishment at all for the burglary.

What we have said also effectively disposes of the petitioner's contention concerning the State's inadequate supply of evidence, as well as his insistence that "a conspiracy must have taken place."

 According to his petition, Sykes' double-jeopardy charge and insistence rest upon the fact (if such it be) that he was indicted for armed robbery and also for carrying a shotgun at the same time for the purpose of going armed. That did not constitute double jeopardy. Besides, he makes no claim that he was tried and convicted under the weapon-carrying indictment.

We consider it uncommonly important to mention that the trial judge filed no written findings or conclusions of law in summarily disposing of this post-conviction petition. This record does not disclose how the transcripts of parts of the record of the petitioner's original trials got into the record in this post-conviction proceeding, but we have assumed that the District Attorney General filed them with his responsive pleading in compliance with the positive mandate of T.C.A. § 40–3814. This Court has repeatedly directed attention to the mandatory nature of the duties which the Post-Conviction Procedure Act imposes upon the District Attorney General and the trial court and the clerk. Brown v. State, Tenn.Cr.App., 445 S.W.2d 669; Blankenship v. State, Tenn.Cr.App., 469 S.W.2d 530. We reiterate and re-emphasize here what we said in *Brown* concerning the importance and mandatory character of those statutory obligations. Our forbearance so far, and in this case, should not be mistak-

enly regarded as a disposition on our part to ignore those statutory mandates.

The judgment of the trial court is affirmed.

WALKER, P. J., and MITCHELL, J., concur.